IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
                                          : CASE NO.  1:08 CV 2717
LARISSA ANN JONES,            :
                                          :
                         Plaintiff, : <u>MEMORANDUM OF OPINION AND</u>
                                          : <u>ORDER GRANTING THE</u>
                  -vs-                 : <u>DEFENDANT'S MOTION FOR</u>
                                          : <u>SUMMARY JUDGMENT</u>
                                          :
BEST BUY STORES, L.P.,         :
                                          :
                              Defendant. :
------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

      The plaintiff Larissa Ann Jones originally filed this suit in Cuyahoga Court of Common Pleas, and it was subsequently removed to this Court on 18 November 2008. (Docket No. 1).  In her amended complaint filed 19 March 2009, Ms. Jones maintains that the defendant Best Buy Stores, L.P., ("Best Buy") engaged in discrimination and retaliation based on gender, in violation of Title VII and R.C. 4112.02(A).  <u>Id.</u> Specifically, the plaintiff, whose employment with the defendant was terminated when she threatened another employee with physical violence, alleges that similarly-situated male employees who made similar threats were not so discharged.  <u>Id.</u>

      This matter is now before the Court on a motion for summary judgment submitted by Best Buy (Docket No. 22), Ms. Jones' response (Docket No. 24), Best Buy's reply, and the Ms. Jones' surreply (Docket No. 26).  For the reasons that follow, the Court will grant Best Buy's motion.

**I. Background**

The defendant Best Buy hired the plaintiff Ms. Jones in March 2007 as a general warehouse worker in the company's Glenwillow, Ohio distribution center ("Glenwillow").  (Docket 22-2 at 18-19, 20-21, 22, hereinafter "Jones Depo").  Ms. Jones was responsible for handling larger consumer appliances to be shipped to or received from Best Buy's various retail outlets.  (Jones Depo at 21-22; 43).  Carrie DePietro, Brian Koniowsky, and James Hallos were warehouse supervisors who oversaw Ms. Jones' work.  (Jones Depo at 31; Docket No. 22-6).  C. Bryan Burton, who hired Ms. Jones, was higher up the Glenwillow management chain.  (Docket No. 24-3 at 34, hereinafter "Koniowsky Depo").  In addition, Best Buy employed a Human Resources Generalist, Michelle Snider, who acted as the day-to-day contact for all employees for any human resources related issues.   (Docket No. 22-4 at 1).

*Best Buy's Policy against Harassment*

Best Buy prohibits any type of harassment of an employee by another employee and maintains a zero-tolerance policy with regard to workplace violence or threats of workplace violence.  (Koniowsky Depo at 20).  The company's employee manual provides three avenues for reporting harassment.  (Docket No. 22 at 55).  The aggrieved employee is first advised to report the matter to his or her manager.  Id.  If the manager is unavailable or if the employee feels it would be inappropriate to contact a manager, then he or she is advised to contact an human resources representative.  Id.  Alternatively, employees are advised to report harassment through the company's Open and Honest hotline.  Id.  Once a complaint has been lodged through one of these

methods, an investigation is to be conducted and the results reported to the employee in a reasonable amount of time. Id.

*Ms. Jones' Complaints*

While employed by Best Buy, Ms. Jones was the only female warehouse worker, and shortly after the start of employment, she began complaining about the manner in which her male co-workers treated her. (Jones Depo at 41). Pursuant to procedures in the employee manual, she initially directed her complaints toward Best Buy's management, including supervisors Brian Koniowsky and Carrie DePietro, as well as Brian Burton. Id. Later she approached Best Buy's human resource representatives. Id. Ms. Jones states that she complained "quite frequently." Id. at 42.

Ms. Jones' 20 August 2009 deposition testimony indicates that the substance of her complaints revolved around "the guys . . . [not taking] too kindly to having [her] around in the back." Id. at 43. In particular, the plaintiff stated,

> They didn't feel I could do the work that they could do, I could lift the things they could lift. They used profanities, they took the key off of my machine before and hid it, just a hostile work environment. There were days I would come in and the supervisor would be the only one that said anything to me the entire eight hours that I would be there. * * * They would do little stuff like take my lunch out of the refrigerator, like literally take my lunch and eat it and it wouldn't be there; take the key off my machine; take my cell phone and hide it. I mean, just immature stuff like that.

Id. at 44, 49. The plaintiff also recalled that her male co-workers would call her "bitch, cunt, fat whore, just to name some of them." Id. at 49. She noted that finally "it got to the point where [she] just told them, 'Leave me alone. I won't mess with you, don't mess with me,' and they would do stuff – [when] I would walk past, [they would say] 'Bitch.'" Id. at 51.

3

According to Mr. Koniowsky's deposition testimony, Ms. Jones' complaints concerned the fact that "people would ignore her, that people wouldn't talk to her . . . . that an employee had blocked her machine. . . . There were various complaints." (Koniowsky Depo at 23).  Carrie DiPietro also attested that Ms. Jones complained that her co-workers were treating her harshly.  (DiPietro Declaration, ¶3).  Both Ms. DiPietro and Mr. Koniowsky claimed that, in their opinions, Ms. Jones lodged neither complaints of sexual harassment nor complaints of discrimination based on gender.  (Koniowsky Depo at 36; DiPietro Declaration, ¶¶4,5).

There is no evidence that she ever expressed a problem with any particular member of Best Buy's management.  In her deposition, when asked whether she ever had any problems with DiPietro, Koniowsky, or Burton, she stated "No."  (Jones Depo at 31-32).  When asked whether Mr. Koniowsky was a good supervisor, she answered, "Overall, yeah."  Id. at  32.  The only potential issue she had with management involved her perception that Mr. Burton was not responding adequately to the problems she was having in the warehouse.  Id.  However, at some point, her supervisors did respond, and Mr. Koniowsky ordered a "sit-down" between Ms. Jones and the rest of the warehouse staff.  Id. at 42.  The "sit-down" apparently worked, at least for a while, and Ms. Jones had no problems with her co-workers for the two months that followed.  Id.

*The Altercation between Ms. Jones and Mr. Keel, which led to her discharge*

When Ms. Jones' difficulties in the warehouse resumed, she had ongoing troubles with warehouse worker Edward Keel.   In particular, she complained to Mr. Koniowsky that Mr. Keel was harassing her and had called her a "bitch" and a "nigger lover."  (Jones Affidavit at 2).

4

On 25 March 2008, Ms. Jones confronted Mr. Keel regarding a discussion that took place the previous day while the plaintiff was out sick.  (Jones Depo at 55).  In that conversation between warehouse staff and supervisor Brian Koniowsky, Mr. Koniowsky addressed the problem of workers taking excessive cigarette and lunch breaks.  (Koniowsky Depo at 40).  Mr. Koniowsky also allegedly informed the group, which included Mr. Keel, that Ms. Jones recently had a miscarriage.  (Jones Depo at 55).  Mr. Koniowsky denies this allegation.  (Koniowsky Depo at 32).  According to what Ms. Jones heard, Mr. Keel made inappropriate comments about her and her miscarriage.  (Jones Depo at 55).

After hearing these reports, Ms. Jones approached Mr. Keel and told him she did not appreciate his alleged comments about her miscarriage.  Id. at  60.  In response, Mr. Keel allegedly stated that "I don't get what you're making a big deal out of it.  It wasn't like it was a real baby. . . And you do go outside and smoke too much. You shouldn't be smoking."  Id.  Ms. Jones then advised Mr. Keel that "if [he had] something say to [her], [he could] say it to [her] at 8:00 when [they] punch out."  Id. at 60-61. According to Ms. Jones, Mr. Keel started laughing "arrogantly" and called her a "bitch."  (Jones Depo at 61).  Supervisor James Hallos claims to have witnessed the incident and maintains that at some point Ms. Jones "threaten[ed] Mr Keel with bodily harm." (Docket No. 22-6).  Warehouse workers William Ullinger and Phillip Hudson, who also claim to have been present, insist that Ms. Jones threatened Mr. Keel.  (Docket Nos. 22-7, 22-8).  Ms. Jones, at one point in her deposition, denied having made such a

5

threat, but, as discussed below, she later admitted to having threatened Mr. Keel. (Jones Depo at 61).

Mr. Hallos then broke up the argument, at which point Ms. Jones left to find Mr. Koniowsky. (Jones Depo at 61). She arrived at his office, upset and crying, and sat down with both Mr. Koniowsky and Ms. DiPietro. (Koniowsky Depo at 22-23). Ms. Jones complained that Mr. Keel was harassing her and that they had an argument. (Koniowsky Depo at 22). According to a statement Ms. DiPietro prepared a few days later, Ms. Jones explained that she told Mr. Keel that "he needs to be a man and they'd take it to the parking lot after work. . . and she'd show [Mr. Keel] how a girl can 'kick his ass.'" (Docket 22-5, Ex. 1). Ms. Jones ultimately admitted having threatened Mr. Keel, having told him that she would "kick his ass, if he call[ed] her another name or [made] any more jokes about [her] losing [her] baby." (Jones Depo at 92).

Shortly after this meeting, Mr. Koniowsky called the HR generalist Ms. Snider and informed her of Ms. Jones' threat. (Koniowsky Depo at 20). He also spoke with Mr. Burton, Mr. Hallos, and Ms. DiPietro who witnessed the incident. Id. at 20, 22, 35. About ten days later, on 4 April 2008, Ms. Jones was terminated for violation of Best Buy's harassment policy. (Docket No. 22-4 at 10).

*Ms. Jones' Allegations of Threats of Violence by Other Employees*

After her termination, Ms. Jones filed a complaint against Best Buy, alleging discrimination on the basis of gender. (Docket No. 1). Her deposition testimony alleges two instances which male employees purportedly made similar threats but were not terminated as a result.

6

First, Ms. Jones alleges that a confrontation occurred between warehouse employees Mr. Ullinger and Mr. Hudson, which involved a threat of violence.  Exactly what was said and how the incident was perceived by those present is in dispute.  Ms. Jones maintains that both she and Mr. Koniowsky witnessed the altercation between Mr. Ullinger and Mr. Hudson.[1]  (Jones Depo at 65).  She recalls that Mr. Ullinger threatened Mr. Hudson, stating "[i]f you don't get the fuck out of my face, I'm going to kick your ass."  Id.  She claims that upon hearing Mr. Ullinger's threat to Mr. Hudson, Mr. Koniowsky told her that he "should go over [to where Ullinger and Hudson were arguing] and separate the two of them before they end up killing each other."  Id.

Mr. Koniowsky disputes this version of the facts.   He describes the incident simply as a "shouting match" and does not recall exactly what Mr. Ullinger said to Mr. Hudson.  (Koniowsky Depo at 17).  Nor does he remember telling Ms. Jones that he "should separate [Ullinger and Hudson] before they end up killing each other."  Id. at 18.  Although he broke up the argument, Mr. Koniowsky did not perceive Mr. Ullinger's behavior to be "threatening."  Id. at 17.  Accordingly, he made no report of the incident to human resources, because "to [his] knowledge, there were no threats made and neither party came forth as a complaint against one another [*sic*]. "  Id. at 16-17, 27.

While both Mr. Ullinger and Mr. Hudson admit that they were "engaged in a verbal argument" and had raised their voices, they also dispute Ms. Jones' version of the facts.  (Docket No. 22-7; Docket No. 22-8).  According to Mr. Hudson, "Ullinger did not threaten [him] in any way," and Mr. Ullinger corroborates this, stating that "[he] did

---

[1]  Ms. Jones claims she was present at the time, but Mr. Koniowsky does not recall whether she was present or not.  (Koniowsky Depo at 17).

7

not threaten Hudson in any way."  (Docket No. 22-7; Docket No. 22-8).  No disciplinary action was taken against either Mr. Hudson or Mr. Ullinger.

Second, Ms. Jones also alleged that threats of violence were made during an incident involving warehouse workers Patrick Kelly and Rick Bodecker, and no one was terminated as a result.[2]  (Jones Depo at 65-66).  According to a statement by Mr. Kelly, he and Mr. Bodecker were moving merchandise around the warehouse and crossed paths in a way that apparently incensed Mr. Bodecker.  (Docket No. 22-9 at 2).  Mr. Kelly reported that Mr. Bodecker said "You fucking bitch why you have to be such an asshole."  Id.  When Mr. Kelly did not respond, Mr. Bodecker approached him and said, "I don't care if you fucking like me but if you ever drive that close to me again I will fuck you up and I am not playing with you."  Id.

Mr. Kelly reported the incident to the Human Resources Representative, Ms. Snider, and she conducted an investigation.  (Docket No. 22-9; Docket No. 22-4).  According to Ms. Snider, the only evidence available were the statements of Mr. Kelly and Mr. Bodecker.  (Docket No. 22-4).  Because she was unable to substantiate Mr. Kelly's claims, no disciplinary action was taken against either employee.  Id.

After Ms. Jones' termination, she filed suit in the Cuyahoga Court of Common Pleas, and the case was removed on diversity grounds on 18 November 2008.  (Docket No. 1).  In an amended complaint filed 19 March 2009, she alleged discrimination and retaliation in violation of Title VII and O.R.C. 4112.01, *et seq.*  (Docket No. 14).

---

[2]   Ms. Jones was not an eyewitness to this event but claims that she heard everyone talking about it the next day.  (Jones Depo 65-66).

8

In its motion for summary judgment, Best Buy argues that there is an absence of a genuine issue of material fact as to Ms. Jones' discrimination and retaliation claims, and that it is entitled to judgment as a matter of law.[3] (Docket No. 22). In particular Best Buy argues that Ms. Jones has introduced no evidence demonstrating that her termination resulted from anything other than her admitted violation of Best Buy's harassment policy. (Docket No. 22-1 at 1).

**II. Summary Judgment Standard**

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)). The burden then shifts to the

---

[3] In its reply, Best Buy also argues that an affidavit submitted by Ms. Jones on 9 November 2009 should be stricken from the record as it is in conflict with her previously taken deposition testimony. The Court need not address the merits of this argument, as the Court will find in favor of Best Buy on its motion for summary judgment.

nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed.R.Civ.P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995).  Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 56.  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994) (marking as standard that the plaintiff must present "more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff").  The nonmovant must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Id. (quoting in part Anderson, 477 U.S. at 257); see Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994). The nonmoving party "must present significant probative evidence in support of its

complaint to defeat the motion for summary judgment." Moore v. Philip Morris Co., 8 F.3d 335, 339-40 (6th Cir. 1993).

Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. See Anderson, 477 U.S. at 248. If the nonmovant fails to present such affirmative evidence, then there is no need for a trial since there are no "genuine factual issues that properly can be resolved only by a finder of fact." Anderson, 477 U.S. at 247-48; see Celotex, 477 U.S. at 322-23.

Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).

**III. Law and Argument**

**A. Gender Discrimination Claims under Title VII and ORC § 4112**

The Court analyzes discrimination claims brought under Title VII or O.R.C. 4112 using the McDonnell Douglas burden shifting framework. Mitchell v. Toledo Hosp., 964 F.2d 577, 582-83 (6th Cir. 1992); Little Forest Medical Ctr. of Akron v. Ohio Civ. Rights Comm., 575 N.E.2d 1164, 1167 (Ohio 1991).  Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by the defendant. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir.1995).  If the plaintiff meets her burden, the burden of production then shifts to the defendant to provide a legitimate, nondiscriminatory reason for its action. Id. Then, the burden shifts back to the plaintiff to show that the proffered reason is merely a pretext. Id.

**1. Plaintiff's *Prima Facie* Case**

In order to establish a *prima facie* case of discrimination through circumstantial evidence, the plaintiff must show (1) that she is a member of a protected group; (2) that she was subjected to an adverse employment decision; (3) that she was qualified for the position; and (4) that she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably. Peltier v. US, 388 F.3d 984, 987 (6th Cir. 2004); Mitchell v. Toledo Hosp., 964 F.2d 577, 581 (6th Cir. 1992).  "The burden of establishing a *prima facie* case is not onerous." Texas Dept. Of

12

Cmty. Affairs v. Burdine, 240 U.S. 248, 253-54 (1981). The plaintiff must only prove the necessary elements by a preponderance of the evidence. Id.

The parties stipulate that, for purposes the defendant's motion, Ms. Jones has satisfied the first three elements, but they dispute whether she can satisfy the fourth with reference to either the Ullinger-Hudson incident or the Bodecker-Kelly incident.

*The Ullinger-Hudson Incident*

First, the plaintiff maintains that she has satisfied the fourth element, because Mr. Ullinger was not terminated when he engaged in substantially the same sort of behavior that resulted in her discharge. (Docket No. 24 at 5-6). Specifically, she contends that Mr. Koniowsky observed Mr. Ullinger threaten to "kick [Mr. Hudson's] ass." Id. at 5-6. She maintains that Mr. Koniowsky's failure to take the same disciplinary action that was taken in her case amounts to disparate treatment on the part of the defendant. Id. at 6.

Best Buy, on the other hand, argues that this does not establish a *prima facie* case of gender discrimination, by pointing out that Mr. Ullinger and Mr. Hudson, both of whom took part in the altercation, testified that no threats of violence were made. (Docket No. 22-1 at 9-10). According to the defendant, because the actual participants in the dispute, along with Mr. Koniowsky, have all denied the Ms. Jones' allegation, the Court should ignore her contrary testimony. Id. In addition, the defendant seems to argue that Ms. Jones is not similarly situated as to Mr. Ullinger, because Ms. Jones, unlike Mr. Ullinger, actually admitted having made a threat of violence. (Docket No. 25 at 3).

13

Material facts are clearly in dispute on this point, as Ms. Jones alleges that she heard Mr. Ullinger tell Mr. Hudson, "I'm going to kick your ass," and Mr. Ullinger, Mr. Hudson, and Mr. Koniowsky all insist that no such threat was made.  Contrary to the defendant's assertions, the Court cannot discount Ms. Jones' allegations, simply because other witnesses, even witnesses directly involved in the incident, have contradicted her.  Ms. Jones has therefore raised a genuine issue of material fact as to whether a similarly situated non-protected employee was treated more favorably than she, which precludes summary judgment on this point.

The Court also rejects Best Buy's argument that Ms. Jones is not similarly situated as to Mr. Ullinger, because Mr. Ullinger did not admit threatening Mr. Hudson.  To be deemed "similarly-situated", the individual with whom Ms. Jones seeks to compare her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.  Mazzella v. RCA Global Communications, Inc., 642 F.Supp. 1531 (S.D.N.Y.1986).

Mr. Ullinger is similarly situated as to Ms. Jones, since Mr. Koniowsky was the supervisor who dealt with both incidents, both Ms. Jones and Mr. Ullinger were subject to Best Buy's harassment policy, and both Ms. Jones and Mr. Ullinger allegedly threatened another employee with bodily harm.  The fact that Ms. Jones admitted making a threat and Mr. Ullinger did not is not the sort of differentiating circumstance that should prevent Ms. Jones from making her *prima facie* case.  It is enough that Mr.

14

Koniowsky allegedly knew of the threat. Whether he learned of the threat as a witness or through the offender's own admission is of little significance.

*The Bodecker-Kelly Incident*

Since Ms. Jones has raised an issue of fact as to the Ullinger-Hudson incident, the Court need not address the Bodecker-Kelly altercation at length. On this point, however, Best Buy essentially argues that Ms. Jones is not similarly situated as to Mr. Bodecker, because, unlike her case, there were no witnesses to the Bodecker-Kelly incident and Best Buy was unable to substantiate Mr. Kelly's claims that Mr. Bodecker threatened him with violence. (Docket No. 22-1 at 10).

The Court agrees with Best Buy that this is the sort of mitigating circumstance that forecloses a comparison between Best Buy's response to Ms. Jones' actions and its response to Mr. Bodecker's actions. According to H.R. Generalist Michele Snider, an investigation was conducted following the Bodecker-Kelly incident, but no disciplinary action was taken because it was one man's word against another's. (Docket No. 22-4 at 2). This situation differs from both the Jones-Keel and the Ullinger-Hudson incidents. In each of those cases, it is alleged that Mr. Koniowsky had direct knowledge, either as a witness or through the admission of a participant, that one employee threatened another with violence. On the other hand, Mr. Koniowsky was not a witness to the Bodecker-Kelly incident, and Mr. Bodecker did not admit his alleged threat to Mr. Koniowsky.

Ms. Jones has raised no issue of material fact on the question of whether she is similarly situated as to Mr. Bodecker. However, because Ms. Jones has met her burden

15

with respect to the Ullinger-Hudson incident, summary judgment is not proper on this point.

### (2) Does Best Buy offer legitimate, nondiscriminatory reasons for Ms. Jones' termination?

Next, Best Buy argues, and Ms. Jones does not dispute, that her admitted violation of the company's harassment policy is a legitimate, non-discriminatory reason for her termination. Little discussion is required on this point, therefore, especially since Best Buy would clearly be within its rights to fire an employee on account of a violation of company policy. See Bilak-Thompson v. Dollar Tree Stores, Inc., 293 F.App'x 380, 384 (6th Cir. 2008)(holding that admitted employee misconduct is a legitimate, non-discriminatory reason for discharge). The exact words Ms. Jones used to threaten Mr. Keel are in dispute, but, by all accounts, including her own, she did threaten Mr. Keel with violence. Best Buy's harassment policy prohibits threats of bodily harm by one employee to another. Therefore, there is no question that Best Buy's proffered reason for her discharge is legitimate and nondiscriminatory.

### (3) Is Best Buy's proffered reason pretextual?

While Best Buy has provided a legitimate, non-discriminatory reason for Ms. Jones discharge, there remains the question of whether its justification is pretextual. To demonstrate pretext, Ms. Jones must show either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer to take the adverse action, or (3) that the proffered reasons were insufficient to motivate

16

the taking of the adverse action. See Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir.1994). In opposing summary judgment, Ms. Jones must produce sufficient evidence from which a jury might reasonably reject the Best Buy's explanation of why it fired her. Mickey v. Zeidler Tool and Die Co., 516 F.3d 516, 526 (6th Cir. 2008).

Under the third option, upon which Ms. Jones relies, a plaintiff ordinarily produces "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." Manzer, 29 F.3d at 1084. However, Ms. Jones may not rely exclusively upon this evidence – the same evidence used to establish her *prima facie* case – but must, instead, introduce some additional evidence of discrimination. Id. The Sixth Circuit has noted with approval that other circuits have concluded that very little additional evidence of discrimination is required so as to defeat summary judgment. Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 564 (6th Cir. 2004). At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's justification. See Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 148 (2000).

In order to show that Best Buy's proffered reason for her discharge is pretextual, Ms. Jones argues that her *prima facie* case "is sufficient in and of itself to establish that Best Buy was motivated by something other than, or in addition to, Jones' threatening conduct." (Docket No. 24 at 8). Furthermore, according to Ms Jones, "[a] jury could

17

readily find that Plaintiff's sex was a motivating factor for the report and subsequent termination." (Docket No. 24 at 8). As support for her position Ms. Jones cites to Madden v. Chattanooga City Wide Service Department, 549 F.3d 666, 676 (6th Cir. 2008), but offers no explanation how the case might assist her in defeating summary judgment.

First, Ms. Jones' suggestion that her *prima facie* case alone is sufficient to create a triable issue of fact on the issue of pretext is an incorrect statement of law.  As already noted, in order to survive summary judgment, Ms. Jones must provide some additional evidence, which, together with her *prima facie* case, would allow a jury to reasonably doubt Best Buy's explanation for her firing.  While little additional evidence is necessary, Ms. Jones has not directed the Court to anything in the record that would do so.

Secondly, Madden is inapposite to Ms. Jones' case.  In Madden, the Sixth Circuit Court of Appeals reviewed the judgment of the district court after a full bench trial. Madden, 549 F.3d at 673-74.  Paying deference to the trial court's findings of fact, the Sixth Circuit held that the court did not clearly err when it found that the employer's justifications for the plaintiff employee's termination were not the actual reasons for the discharge. Id. at 678.  Because Ms. Jones' case is on an entirely different procedural footing, and this Court has not heard the testimony of live witnesses, Madden is inapplicable in this instance.  Furthermore, even if Madden were on all fours with the present case, it would still be of little assistance to Ms. Jones, since the Madden plaintiff introduced evidence in addition to his *prima facie* case to show that the employer's justification was pretextual.  Ms. Jones has not done this.

18

While Ms. Jones has presented abundant evidence that some of her fellow employees acted offensively toward her, she simply has not put on evidence that would allow a jury to reasonably doubt Best Best's justification for her firing.  Therefore, because Ms. Jones has not raised a genuine issue of material fact as to pretext, the Court will grant Best Buy's motion for summary judgment.

### C. Retaliation Claims under Title VII and ORC § 4112

Ms. Jones' retaliation claims, like her discrimination claims, are based on circumstantial evidence, and, as such, are also analyzed under the McDonnell Douglas burden shifting framework.  Ladd v. Grand Truck W.R.R., Inc., 552 F.3d 495, 502 (6th Cir. 2009).  The Court need not address whether Ms. Jones established a *prima facie* case of retaliation, because she has failed to create a genuine issue of material fact as to pretext.   As discussed above, Ms. Jones has introduced no evidence that would allow a jury to reasonably doubt Best Buy's proffered explanation for her termination.  The Court will therefore grant the defendant's motion for summary judgment on Ms. Jones' retaliation claims as well.

19

**IV. Conclusion**

For the reasons stated above, the Court grants summary judgment in favor of Best Buy, and Ms. Jones' claims are dismissed as a matter of law pursuant to Fed. R. Civ. P. 56(c).

IT IS SO ORDERED.

    /s/ Lesley Wells
UNITED STATES DISTRICT JUDGE

Date: 2 February 2010